1

2

3

4

5

6

7

8 IN THE UNITED STATES DISTRICT COURT

9 FOR THE EASTERN DISTRICT OF CALIFORNIA

10 GREG WEINSTEIN,

11        Plaintiff,               No. CIV S-04-2636 PAN

12   vs.

13
JO ANNE B. BARNHART,
14 Commissioner of Social Security,

15        Defendant.          ORDER
_____/
16

17        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18 proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19 Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20 Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21 discussed below, the court will grant plaintiff's motion for summary judgment or remand and

22 deny the Commissioner's cross-motion for summary judgment.

23 /////

24 /////

25 /////

26 /////

1

I. Factual and Procedural Background

In a decision dated September 28, 2001, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of depression, quintuple heart bypass surgery, coronary artery disease, hypertension, diabetes, and hepatitis C, but that these impairments do not meet or medically equal a listed impairment; plaintiff's mental impairments cause no restrictions in daily living, mild difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace, and no episodes of decompensation; plaintiff's allegations regarding the extent of his limitations were

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1    not credible; plaintiff has the residual functional capacity to sit for six hours in an eight hour

2    workday, stand or walk for six hours in an eight hour workday, and lift and carry 20 pounds

3    occasionally and 10 pounds frequently; plaintiff has a nonexertional limitation that limits him to

4    simple, repetitive tasks; plaintiff's nonexertional limitations do not significantly compromise his

5    ability to perform a full range of light work; and plaintiff is not disabled.  Administrative

6    Transcript ("AT") 16, 23.  Plaintiff contends that the ALJ erred by improperly rejecting

7    plaintiff's complaints regarding the severity of his impairments; by ignoring evidence of

8    plaintiff's psychiatric impairments; by improperly weighing the medical evidence in the record;

9    by failing to consider the side effects of plaintiff's medication in determining residual functional

10   capacity; and by failing to take testimony from a vocational expert.

11   II.  <u>Standard of Review</u>

12         The court reviews the Commissioner's decision to determine whether (1) it is

13   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

14   record as a whole supports it.  <u>Copeland v. Bowen</u>, 861 F.2d 536, 538 (9th Cir. 1988) (citing

15   <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 575-76 (9th Cir. 1988)).

16   Substantial evidence means more than a mere scintilla of evidence, but less than a

17   preponderance.  <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996) (citing <u>Sorenson v.</u>

18   <u>Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

19   reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402

20   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S.

21   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, <u>Howard v. Heckler</u>,

22   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

23   detracts from the ALJ's conclusion weighed.  <u>See Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir.

24   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

25   supporting evidence.  <u>Id.</u>; <u>see also Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If

26   substantial evidence supports the administrative findings, or if there is conflicting evidence

3

1  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u>

2  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

3  improper legal standard was applied in weighing the evidence, <u>see Burkhart v. Bowen</u>, 856 F.2d

4  1335, 1338 (9th Cir. 1988).

5  III. <u>Analysis</u>

6        a. <u>The ALJ Properly Determined Plaintiff's Credibility.</u>

7              The ALJ found plaintiff to be not credible. This finding was proper.  In his

8  findings, the ALJ provided multiple reason for his assessment of plaintiff's credibility that are

9  supported by substantial evidence in the record.

10             The ALJ determines whether a disability applicant is credible, and the court defers

11  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  <u>See, e.g.</u>,

12  <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

13  an explicit credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad</u>

14  <u>v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

15  supported by "a specific, cogent reason for the disbelief").

16             In evaluating whether subjective complaints are credible, the ALJ should first

17  consider objective medical evidence and then consider other factors.  <u>Bunnell v. Sullivan</u>, 947

18  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

19  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

20  medication, treatment and functional restrictions.  <u>See id</u>. at 345-47.  The ALJ also may consider:

21  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

22  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

23  prescribed course of treatment, and (3) the applicant's daily activities.  <u>Smolen v. Chater</u>, 80 F.3d

24  1273, 1284 (9th Cir. 1996); <u>see generally</u> SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

25  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

26  and effect of symptoms, and inconsistencies between testimony and conduct also may be

4

1    relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

2    to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

3    the ALJ in determining whether the alleged associated pain is not a significant nonexertional

4    impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

5    may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

6    1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

7    F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

8    Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

9    Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

10           Plaintiff described his primary physical complaints as "fatigue and pain."  AT 49.

11   Plaintiff stated that he was "very, very weak" and became "dizzy" when he bent over or got

12   dressed in the morning.  AT 40.  In addition, plaintiff also complained of pain in his chest and

13   tingling in his fingers and legs.  AT 42-43.  Other physical ailments described by plaintiff

14   included a hernia, AT 43, hepatitis C, AT 44, cirrhosis of the liver, id., stomach and bowel

15   problems, id., and diabetes, AT 51.

16           The ALJ utilized a number of factors in his assessment of plaintiff's credibility.

17   In addition to the lack of objective evidence in the record to support the full extent of plaintiff's

18   allegations, AT 20, the ALJ noted that plaintiff failed to follow his treating physician's advice.

19   AT 17.  Furthermore, the ALJ found that plaintiff's daily activities were inconsistent with his

20   subjective complaints.  AT 20.  These findings by the ALJ were proper reasons to discredit

21   plaintiff's credibility.

22           The ALJ thoroughly examined all of the objective medical evidence that

23   contradicted each of plaintiff's complaints.  According to the ALJ, none of the medical findings

24   indicated a level of impairment consistent with plaintiff's described limitations.  AT 20.  The

25   ALJ properly concluded that the medical evidence does not support plaintiff's claims of

26   disability.

1    The ALJ found plaintiff's complaints of disabling heart problems and chest pain

2    were contradicted by the medical findings.  Despite plaintiff's complaints of chest pain,

3    examinations by his treating cardiologist, Dr. Cacho, were consistently normal.  AT 126, 129,

4    137.  In fact, an exercise stress test conducted after plaintiff's heart bypass and evaluated by Dr.

5    Cacho found no evidence of ischemia, an exercise induced restriction in blood flow.  AT 133.

6    Other medical opinions by non-specialists confirmed these findings.  Dr. Rizvi, an

7    examining physician, found no evidence of tenderness in plaintiff's chest during an examination

8    conducted on May 16, 2000.  AT 293.  Furthermore, she found nothing abnormal with plaintiff's

9    heart.  Id.

10    This finding was consistent with the opinion of Dr. Shah, plaintiff's treating

11    physician who found no tenderness in plaintiff's chest during a January 20, 2000, examination.

12    AT 235.  In eight separate examinations between June 2000 through January 2001, Dr. Shah

13    consistently found plaintiff to be in no distress and with regular heart rate and rhythm.  AT 384-

14    89, 391-92, 395-96.  In fact, the record shows that plaintiff did not report to Dr. Shah any

15    complaints of pain similar to those claimed in these proceedings.

16    Radiological images confirmed these doctors' conclusions.  On September 13,

17    1999, chest x-rays were normal.  AT 151.  Follow up x-rays on July 7, 2000, were also normal.

18    AT 202.

19    While plaintiff had significant health problems that led to his quintuple bypass

20    surgery on March 22, 1999, and follow up sternal repair on October 18, 1999, there is substantial

21    medical evidence in the record to support the ALJ's conclusion that those problems have

22    resolved or are not of the severity alleged by plaintiff.  The ALJ properly found that post-surgical

23    examinations of plaintiff revealed nothing abnormal.  AT 17.  There is no evidence in the record

24    indicating that plaintiff suffered any long-term complications from his multiple surgeries.

25    Reliance solely on the lack of objective medical evidence to discredit the severity

26    of plaintiff's complaints of pain is improper.  See Bunnell, 947 F.2d at 343.  However, in

1   addition to the medical evidence in this case, the ALJ noted that plaintiff also failed to follow his

2   doctors' advice for changes in his behavior that could improve his health.  AT 17.  Plaintiff

3   testified that, despite his doctors' warning to quit smoking, he still smoked "half a pack to a

4   pack" of cigarettes every day.  AT 41.  Such a failure to follow a doctor's recommendation is a

5   basis upon which to discredit plaintiff's complaints.

6          Plaintiff also offered inconsistent information about his smoking habits to his

7   doctors.  On June 14, 1999, plaintiff told Dr. Cacho that he quit smoking in 1998.  AT 136.

8   However, on November 17, 1999, plaintiff told Dr. Morrissey that he continued to smoke at least

9   a half a pack a day since his bypass surgery.  AT 140.  This less than candid disclosure to his

10  doctors further undermines plaintiff's credibility.  See Smolen, 80 F.3d at 1284.

11         The failure to follow doctors' advice was also evident in plaintiff's inability to

12  quit drinking.  Dr. Shah told plaintiff on October 3, 2000, that he should not drink because

13  alcohol interfered with his diabetes medication.  AT 391.  However, at the hearing, plaintiff

14  testified that he continued drinking until May 2001.  AT 41.

15         While the failure to follow a physician's recommendation does not require a

16  conclusion that plaintiff is not credible, plaintiff offered no reason for his failure to follow this

17  prudent advice.  See 20 C.F.R. § 404.1530(c); Gallant v. Heckler, 753 F.2d 1450, 1455(9th Cir.

18  1984).  The ALJ properly noted this inability to follow a prescribed course of treatment in his

19  analysis of plaintiff's credibility.  Such reasoning was not improper.

20         Furthermore, the ALJ also found that the extent of plaintiff's daily activities cast

21  doubt upon his subjective complaints of disabling pain.  AT 20.  Plaintiff's ability to engage in

22  some daily activities does not by itself compromise his subjective complaints of pain.  See

23  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050

24  (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding that one need not be

25  "utterly incapacitated" in order to be disabled).  However, the ALJ found that plaintiff spent a

26  substantial part of his day performing activities consistent with those necessary for productive

7

1  work.  See Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard

2  work, and occasionally care for a friend's child sufficient to undermine complaints of pain).

3  Such a finding was supported by substantial evidence.

4          Plaintiff testified that he has lived alone for the past seven years.  AT 31.  During

5  that time, he has attended to his personal hygiene, cooked and cleaned, as well as received visits

6  from family and friends, AT 103.  With the exception of running the lawn mower, plaintiff stated

7  that he was able to do his own yard work without assistance.  AT 102.

8          In addition, the record documents plaintiff's ability to move about freely and leave

9  his home at will, in spite of his claimed limitations.  Plaintiff described owning and maintaining

10  his own truck, driving it to the store and out to eat when needed.  AT 32-33.  He testified that he

11  shops for groceries on a weekly basis, AT 49, and goes shopping on a daily basis "just to get out

12  of the house."  Id.

13          Such freedom of movement, when combined with the lack of objective evidence

14  in the record as well as plaintiff's failure to follow the treatment recommendations of his doctors,

15  casts doubt upon plaintiff's complaints of pain and impairment.  Substantial evidence supports

16  the ALJ's conclusions.  The ALJ's finding that plaintiff's subjective complaints of heart

17  problems and chest pain lacked credibility is not in error.

18          In addition to his complaints of chest pain, the ALJ properly found that the

19  medical evidence does not support the full extent of plaintiff's many other alleged physical

20  ailments.  The objective findings of myriad examinations fail to support a level of impairment

21  consistent with plaintiff's complaints.  Furthermore, the record is devoid of any aggressive

22  treatment protocol that would support plaintiff's statements about the severity of his conditions.

23  AT 30; see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(noting that conservative

24  treatment suggested a lower level of pain than asserted).

25          Plaintiff complained of problems resulting from his diabetes.  However, on

26  January 11, 2001, plaintiff's glucose control index tested in the excellent range.  AT 386.  As a

result, Dr. Shah, plaintiff's treating physician, opined that plaintiff's diabetes was under control, and provided a letter to the Department of Motor Vehicles attesting to that fact.  AT 384.   In every examination of plaintiff, Dr. Shah found no complications from plaintiff's diabetes.  AT 384-89, 391-92, 395-96.

The ALJ also discredited plaintiff's subjective complaints of liver problems.  AT 21.  As found by the ALJ, despite hepatitis C with grade two inflammation and stage two fibrosis, plaintiff's liver problems were under control and caused no significant limitations.  AT 18.  The ALJ noted plaintiff's normal liver function test.  AT 187.

The ALJ found the lack of medical evidence documenting serious liver problems to be significant.  AT 18.  The ALJ noted the lack of any medical evidence of jaundice, scleral icterus, ascites, hepatomegaly, spider nevi, palmar erythema or esophageal varices.  Id.  Dr. Shah noted no significant findings concerning plaintiff's hepatitis or liver, and plaintiff reported no complaints to him.  AT 384-89, 391-92, 395-96.  Plaintiff's hepatitis was not a factor in Dr. Rizvi's functional assessment of plaintiff's capabilities.  AT 295.

Furthermore, the ALJ found that there is little evidence in the record to support the conclusion that plaintiff suffers from any mental impairments that render him disabled. Plaintiff complained of poor memory, AT 44-45, and depression or feelings of worthlessness, AT 53.  As noted by the ALJ, the record is devoid of any substantive evidence supporting plaintiff's complaints of mental illness.  AT 21.

The extent of plaintiff's treatment for mental illness consisted of prescription medication given by his treating physician.  On December 15, 1999, Dr. Shah prescribed Xanax for plaintiff's inability to sleep.  By January 15, 2000, Dr. Shah noted that plaintiff was no longer taking this prescription.  AT 234.  Dr. Shah prescribed Paxil on or about October 31, 2000.  AT 391.  According to plaintiff, he continued to take Paxil at the time of his hearing.  AT 45.  Dr. Collins also stated that plaintiff had taken Elavil and amitriptyline, AT 297; however, the record is devoid of any evidence of this fact.  Given the nature of plaintiff's complaints, the ALJ

9

1  correctly noted that the absence of more significant treatment protocols casts doubt upon

2  plaintiff's credibility.

3          There is also a dearth of objective medical findings in the record to support

4  plaintiff's complaints of mental illness.  The only mental health evaluation in the record was

5  conducted by examining psychiatrist Dr. Collins on September 2, 2000.  AT 296.  As the ALJ

6  noted in his evaluation of the evidence, Dr. Collins determined that plaintiff suffered from some

7  mental issues.  AT 19, 296.  However, Dr. Collins opined that plaintiff's problems were more

8  physical than psychiatric.  AT 296.

9          While Dr. Collins recommended pharmacologic and therapeutic treatments for

10  plaintiff, plaintiff testified that he is not involved in therapy.  AT 45.  Furthermore, the record

11  does not reflect any referrals of plaintiff by his treating doctors to see a mental health

12  professional.  Indeed, other than to prescribe Paxil, Dr. Shah makes only one treatment note

13  regarding plaintiff's mental illness during the 12 separate visits that are documented in the

14  record.  AT 396.

15          The factors considered by the ALJ in his evaluation of plaintiff's credibility were

16  all valid and supported by the record.  Significant objective evidence, or the lack thereof, as well

17  as plaintiff's failure to follow treatment and his daily activities cast doubt upon plaintiff's

18  credibility.  The ALJ's credibility determination was based on permissible grounds and will not

19  be disturbed.

20          b.  The ALJ Properly Considered Plaintiff's Complaints of Psychiatric Impairment.

21          The ALJ properly considered plaintiff's complaints of depression.  As noted

22  above, the ALJ properly weighed the medical evidence in this regard and discredited plaintiff's

23  subjective complaints regarding the extent of his mental impairment.  There is no indication that

24  the ALJ ignored any of the medical evidence in the case.

25          The ALJ found plaintiff's depression to be severe.  AT 16.  Consequently, the

26  ALJ adjusted plaintiff's residual functional capacity to include only simple, repetitive work.  In

1    reaching this conclusion, the ALJ considered all medical evidence in the record.

2            The ALJ specifically discussed all the medical evidence in the record as it relates

3    to plaintiff's mental health.  AT 19.  The ALJ described the evaluation performed by Dr. Collins.

4    Id.  In his findings, the ALJ noted Dr. Collins' conclusion, including his opinion that plaintiff

5    could respond appropriately to co-workers, supervisors, and the public.  Id.  The ALJ also

6    discussed the State Agency opinion that plaintiff was limited to simple tasks with simple

7    instructions.  AT 19.

8            Furthermore, the ALJ thoroughly analyzed the treatment history provided by

9    plaintiff's treating physicians.  AT 16-19.  As noted by the ALJ, there was "[n]o additional

10   evidence...in the record indicating that [plaintiff] sought treatment for depression from a

11   psychiatrist or psychologist."  AT 19.  This statement is supported by the record.  The ALJ's

12   failure to include any mention of plaintiff's depression during his discussion of the treating

13   physicians' records is not the result of an intentional avoidance of evidence, but rather, due to the

14   fact that plaintiff's treating physicians gave no opinions supporting a conclusion that plaintiff

15   suffered significant mental impairment.  AT 164, 384-89, 391-92, 395-96.

16           Plaintiff's treating physicians do mention plaintiff's depression on two occasions.

17   On June 5, 2000, Dr. Shah reported that plaintiff stated that he was "anxious," "nervous," and

18   "sometimes depressed."  AT 396.  On July 12, 2000, plaintiff complained to Dr. Rishwain that he

19   felt depressed and had psychological trouble adjusting to his diabetes.  AT 164.

20           Both instances involved plaintiff's self-reporting of depression, and were not

21   supported by any objective findings.  Furthermore, neither doctor felt the complaints serious

22   enough to warrant referral to a specialist.  In fact, the record shows that neither doctor offered

23   any opinion of plaintiff's mental illness.

24           Given their true nature, the ALJ's failure to discuss in exquisite detail his findings

25   as they concern these two complaints of depression was not in error.  See Jones v. Heckler, 760

26   F.2d 993, 997 (9th Cir. 1985) (requiring specific and legitimate reasons for ignoring the opinion

1  of treating physicians).  The ALJ clearly discussed all important and medically supported aspects

2  of plaintiff's complaints in light of the evidence in the record.  The ALJ's evaluation of

3  plaintiff's mental impairments was proper.

4       c.  <u>The ALJ Properly Weighed the Medical Evidence in this Case.</u>

5         The weight given to medical opinions depends in part on whether they are

6  proffered by treating, examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821,

7  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

8  who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.;  <u>Smolen v.</u>

9  <u>Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

10         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

11  considering its source, the court considers whether (1) contradictory opinions are in the record;

12  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

13  treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u> , 81

14  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

15  rejected for "specific and legitimate" reasons.  <u>Lester</u>, 81 F.3d at 830.  While a treating

16  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

17  examining professional's opinion (supported by different independent clinical findings), the ALJ

18  may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

19  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

20  weight to conclusory opinions supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172

21  F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

22  rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a non-examining professional,

23  without other evidence, is insufficient to reject the opinion of a treating or examining

24  professional.  <u>Lester</u>, 81 F.3d at 831.

25         The ALJ properly credited the findings of the State Agency as they concerned

26  plaintiff's physical limitations.  AT 16.  Furthermore, with regards to plaintiff's depression,

1   based upon the report of an examining psychiatrist, the ALJ found plaintiff capable of

2   performing only simple, repetitive tasks.  Id.  The ALJ noted the objective medical evidence did

3   not provide any basis for a more restrictive residual functional assessment.

4          In his assessment of plaintiff's physical abilities, the ALJ adopted the findings of

5   the non-examining State Agency.  AT 16.  Consequently, the ALJ found plaintiff to have the

6   residual functional capacity to sit for six hours in an eight hour workday, stand and walk for six

7   hours in an eight hour workday, and lift and carry 20 pounds frequently and 10 pounds

8   occasionally.  AT 16.  The ALJ based this finding upon the medical evidence in the record.

9          The ALJ further found a nonexertional limitation based upon the report of Dr.

10  Collins, an examining psychiatrist in this case.  As a result of plaintiff's mental impairment, the

11  ALJ tailored his residual functional capacity by limiting plaintiff to simple, repetitive work.  AT

12  16.  This finding was not in error.

13         Residual functional capacity is what a person "can still do despite [the

14  individual's] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

15  Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

16  "physical and mental capabilities").  Dr. Collins found a number of areas where plaintiff would

17  not be successful, including jobs requiring instruction, changes in work routine, or having

18  stressful environments.  AT 299.  Given these limitations, the ALJ found plaintiff capable of

19  simple, repetitive tasks, AT 16; jobs that plaintiff could still perform and that did not implicate

20  the weaknesses identified by Dr. Collins.

21         Substantial evidence supports this conclusion.  Dr. Collins found plaintiff limited

22  in his ability to work as a result of his mental status deficits and depressed mood.  AT 299.

23  There is no other evidence in the record to upset these findings by the ALJ.

24         The opinion of the State Agency supports the ALJ's findings.  The ALJ stated that

25  he was not relying on the conclusions of the State Agency; however, it is not apparent that that

26  was the case.  While the ALJ rejected the full extent of the State Agency opinion because it was

13

not supported by the objective evidence in the record, AT 19, the ultimate residual functional

capacity assessment made by the State Agency found plaintiff limited to simple, repetitive tasks,

AT 345, a conclusion similar to that of the ALJ.

To the extent the ALJ discounted particular aspects of the State Agency opinion,

this finding was not in error.  As noted above, there is a significant lack of psychiatric evidence

supporting plaintiff's complaints of depression.  Dr. Collins, the examining psychiatrist, provided

the only complete psychiatric report in the record.  AT 296.  It was not in error for the ALJ to rely

on this opinion over the non-examining doctors at the State Agency.

d.  The ALJ Failed to Properly Considered the Side Effects of Plaintiff's Medications in
Determining Residual Functional Capacity.

In evaluating plaintiff's pain, any side effects caused by medications must be

considered.  20 C.F.R. § 404.1529(c)(3)(iv); SSR 88-13.  Side effects can have a significant

limitation on plaintiff's ability to work and should be considered in the disability evaluation

process if plaintiff's medications do actually cause the reported symptoms.  Varney v. Secretary

of Health and Human Services, 846 F.2d 581, 585 (9th Cir. 1988).  Disregarding plaintiff's

testimony as it relates to the side effects of medications requires specific findings similar to those

required for excess pain.  Cf. Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986).  In this

case, the ALJ did not provide the requisite findings to discount plaintiff's complaints.

Plaintiff testified that he suffered stomach problems as a side effect of his

medication.  AT 45-46.  According to plaintiff, this effect could be reduced, but not eliminated,

by eating prior to taking his medication.  AT 46.  This is consistent with Dr. Shah's advice that

plaintiff take his diabetes medication, Glucophage, with food.  AT 396.

The ALJ made findings that plaintiff's subjective complaints of pain and other

physical and mental ailments were not credible.  AT 20.  However, he offered nothing specific as

it concerned plaintiff's complaints of stomach problems caused by his medication.  While the

ALJ did note in his findings that there was no objective medical evidence to support plaintiff's

complaints of stomach problems, he limited his discussion to plaintiff's gallbladder and hernia problems, areas distinct from side effects caused by medication that were corrected through surgery without incident.  AT 21, 401.  The specific discussion by the ALJ of the particular sources of plaintiff's stomach pain precludes the notion that the ALJ's discussion of stomach problems implicitly encompassed the side effects to which plaintiff testified.

There is nothing in the ALJ's findings indicating that he gave plaintiff's subjective complaint of stomach problems the attention required under the law.  Remand is necessary to permit the ALJ to accept or reject plaintiff's evidence regarding the side effect of his medication.  If rejected, specific findings regarding plaintiff's complaints must be supported by substantial evidence in the record.

e.  The ALJ Erred by Failing to Rely Upon the Grids.

The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider at step five of the sequential analysis in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."  Where the grids do not adequately capture the full range of plaintiff's exertional and nonexertional limitations, use of a vocational expert (VE) instead of the grids is required.  Jones, 760 F.2d at 998; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).

Plaintiff contends that because of his nonexertional limitations,[2] it was incumbent upon the ALJ to obtain the testimony of a vocational expert.  Cf. Jones, 760 F.2d at 998 (ALJ may apply grids in lieu of taking the testimony of a vocational expert only when the grids

_____

[2]  Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations.  Desrosiers, 846 F.2d at 579; 20 C.F.R., Pt. 404, Subpt. P,  Appendix 2, § 200.00(e).

accurately and completely describe the claimant's abilities and limitations); <u>see also</u> <u>Polny v.</u>
<u>Bowen</u>, 864 F.2d 661, 663-64 (9th Cir. 1988) (where plaintiff unable to perform past work and
has significant nonexertional limitations, then testimony of vocational expert is required to
demonstrate the existence of specific jobs that plaintiff claimant is capable of performing despite
these restrictions). The ALJ found plaintiff to have the nonexertional limitation requiring the
performance of simple, repetitive tasks. AT 16. In light of this limitation, the ALJ refused to
utilize a vocational expert, finding instead that the demands of unskilled work were adequately
captured in his limitation. This finding was in error.

The ALJ relied upon the definition of unskilled work to determine that plaintiff's
functional limitation of simple, repetitive tasks was adequately encompassed by the grids. AT
22. Unskilled work is defined as work that needs little or no judgment to perform simple duties,
such as handling, loading, or offbearing, and can generally be learned on the job in 30 days or
less. 20 C.F.R. § 404.1568(a). Unskilled work does not require working with people. 20 C.F.R.
Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g); SSR 85-15.

The ALJ stated that unskilled work was consistent with plaintiff's limitation to
"simple, *routine* tasks." AT 22 (emphasis added). This may be so. However, in his assessment
of plaintiff's residual functional capacity, the ALJ found plaintiff limited to "simple, *repetitive*
tasks." AT 16 (emphasis added).

Given the nature of the various categories of work, it cannot be said that routine
and repetitive are synonyms for the same type of work. Routine implies a standard operating
procedure. This is different from a repetitive task that requires duplication of an action in
relatively quick succession.

The ALJ provides no findings to support his conclusion that plaintiff is capable of
performing routine work, as opposed to repetitive work. While the grids may be appropriate, the
ALJ misapplied the facts of this case. The ALJ's analysis in light of this error is fundamentally
flawed.

1        As a result, remand is necessary for the ALJ to complete the sequential analysis

2  utilizing the proper residual functional capacity.  If the grids adequately capture the full extent of

3  plaintiff's nonexertional limitations to simple, repetitive work, use of a VE is not required.  If

4  not, use of a VE is necessary to assess the availability of work in the national economy plaintiff is

5  capable of performing.

6        For the foregoing reasons, this matter will be remanded under sentence four of 42

7  U.S.C. § 405(g) for further development of the record and further findings addressing the

8  deficiencies noted above.

9        Accordingly, IT IS HEREBY ORDERED that:

10        1.  Plaintiff's motion for summary judgment is denied;

11        2.  The Commissioner's cross motion for summary judgment is denied; and

12        3.  This matter is remanded for further proceedings consistent with this order.

13  DATED: June 13, 2006.

14

15                                             UNITED STATES MAGISTRATE JUDGE

16

17  ggh13
   Weinstein.ss.wpd

18

19

20

21

22

23

24

25

26